UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BILL ROE,

                           Plaintiff,

              v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                           Defendant.

Case No. C16-5567-RSM

**ORDER ON SOCIAL SECURITY DISABILITY**

## I.      INTRODUCTION

Plaintiff, Bill Roe, brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Dkt. 3.  This matter has been fully briefed and, after reviewing the record in its entirety, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** this case with prejudice.

## II.      BACKGROUND

On August 8, 2012, Mr. Roe filed an application for Disability Insurance Benefits (DIB)

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit.  The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER ON SOCIAL SECURITY
DISABILITY - 1

alleging disability commencing on November 30, 2011. Tr. 14, 67-68. The application was denied initially and upon reconsideration. Tr. 14, 28-36. A hearing was held before Administrative Law Judge (ALJ) Cynthia D. Rosa on August 5, 2014. Tr. 14, 457-81. Mr. Roe was represented by counsel, Christopher Morales. Tr. 457-81. Laynya Stevens, a vocational expert, also testified at the hearing. *Id.* On September 25, 2014, Judge Rosa issued an unfavorable decision. Tr. 14-26. The Appeals Council denied review, and the ALJ's decision became final. Tr. 5-7. Mr. Roe then timely filed this judicial action.[2]

## III. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## IV. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to

---

[2] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER ON SOCIAL SECURITY
DISABILITY - 2

more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.   EVALUATING DISABILITY

As the claimant, Mr. Roe bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Tackett*, at 1098-99. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the inquiry ends without the need to consider subsequent steps. *Id.*; 20 C.F.R. §§ 404.1520, 416.920. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [3] If he is, disability benefits are denied. *Id.* If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have such impairments, he is not disabled. *Id.* If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[3] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.  *Id.*

## VI.   THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ found that "Mr. Roe last met the insured status requirements of the Social Security Disability Act on December 31, 2011. Therefore the period at issue in this decision is November 30, 2011 through December 31, 2011."  Tr. 16.  The ALJ further found:

**Step one:**  Mr. Roe did not engage in substantial gainful activity during the period at issue.

**Step two:**  Through the date last insured (DLI) Mr. Roe had the following severe impairments: hepatitis C; status-post splenectomy, with leukocytosis and polycythemia; history of elevated RA and ANA factor with presumed rheumatoid arthritis; early signs of COPD.

**Step three:**  Through the DLI, these impairments did not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:**  Through the DLI, Mr. Roe could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as work that involves lifting and carrying 20 pounds occasionally and 10 pounds frequently and standing and/or walking for up to 6 hours in an 8-hour workday.  He was able occasionally to climb ramps and stairs but never ladders, ropes, or scaffolds.  He was able occasionally to balance, stoop, kneel, crouch, and crawl.  He could not tolerate concentrated exposure to fumes odors, gases, and dust, as well as hazards.

**Step four:**  Through the DLI, Mr. Roe could not perform past relevant work.

**Step five:**  Through the DLI, as there were jobs that exist in significant numbers in the

---

[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Part 404, Subpart P. Appendix 1.

1    national economy that Mr. Roe could perform, he was not disabled.

2    Tr. 14-26.

### VII.    ISSUES ON APPEAL

4    Mr. Roe claims the ALJ erred in failing to consider hypertension a severe impairment at

5    step two of the sequential evaluation process.  Dkt. 14 at 2, 6-8.  Mr. Roe further argues the ALJ

6    erred in failing to adequately account for the limitations resulting from his hypertension, COPD,

7    hepatitis, and rheumatoid arthritis in the RFC.  *Id.* at 8-9.  Mr. Roe also argues the ALJ erred in

8    discounting the credibility of his subjective symptom testimony.  *Id.* at 2, 9-11. Mr. Roe contends

9    this matter should be remanded for an award of benefits or, alternatively, for further

10   administrative proceedings.  *Id.* at 12.

### VIII.   DISCUSSION

**A.    Failure to Include Hypertension as a Severe Impairment at Step Two**

13   Mr. Roe argues the ALJ harmfully erred in failing to include hypertension as a severe

14   impairment at step two.  Dkt. 14 at 2, 6-8.  The Court disagrees.

15   At step two of the sequential evaluation, the Commissioner must determine "whether the

16   claimant has a medically severe impairment or combination of impairments."  *See Smolen v.*

17   *Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii).  The claimant has

18   the burden to show that (1) she has a medically determinable physical or mental impairment, and

19   (2) the medically determinable impairment is severe.  *See Bowen v. Yuckert*, 482 U.S. 137, 146

20   (1987).  A "'physical or mental impairment' is an impairment that results from anatomical,

21   physiological, or psychological abnormalities which are demonstrable by medically acceptable

22   clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  Thus, to

23   establish the existence of a severe impairment, the claimant must provide medical evidence

ORDER ON SOCIAL SECURITY
DISABILITY - 6

consisting of signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1508.  However,

"'[r]egardless of how many symptoms an individual alleges, or how genuine the individual's

complaints may appear to be, the existence of a medically determinable physical or mental

impairment cannot be established in the absence of objective medical abnormalities; i.e., medical

signs and laboratory findings[.]'"  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005)

(quoting SSR 96-4p).

       In addition to producing evidence of a medically determinable physical or mental

impairment, the claimant bears the burden at step two of establishing that the impairment or

impairments is "severe."  *See Bowen*, 482 U.S. at 146.  An impairment or combination of

impairments is severe if it significantly limits the claimant's physical or mental ability to do

basic work activities.  20 C.F.R. §§ 404.1520(c), 404.1521(a).  "The step two inquiry is a de

minimus screening device to dispose of groundless claims."  *Id*.  An impairment or combination

of impairments may be found "'not severe' only if the evidence establishes a slight abnormality

that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at

1290 (citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988)).  However, the claimant has

the burden of proving his "impairments or their symptoms affect [his] ability to perform basic

work activities."  *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001).

       Mr. Roe argues that that the record shows that he "has carried the diagnosis of

hypertension since well before his alleged onset date, and has continued to long after the date last

insured."  Dkt. 14 at 7.  There is no dispute that Mr. Roe had hypertension prior to, during and

subsequent to the period in question.  Dkt. 17 at 5 ("It is undisputed that Roe has hypertension.").

However, a diagnosis, without more, is insufficient to establish a severe impairment.  *See, e.g.,*

*Bowen*, 482 U.S. at 146; *Febach v. Colvin*, 580 F. App'x. 530, 531 (9th Cir. 2014) (a "diagnosis

ORDER ON SOCIAL SECURITY
DISABILITY - 7

1  alone is insufficient for finding a 'severe' impairment").  Rather, Mr. Roe must demonstrate that

2  his hypertension affected his ability to perform basic work activities during the relevant period.

3  *See Edlund*, 253 F.3d at 1159-60.

4       Mr. Roe cites to two treatment notes, dated prior to his alleged disability onset date, in

5  support of his contention that his hypertension caused functional limitations.  Dkt. 14 at 7-8.  The

6  first treatment note, dated September 7, 2011, indicates that Mr. Roe reported having elevated

7  blood pressure the previous day and that after walking up stairs at work his blood pressure was

8  181/107 and he was experiencing dyspnea (shortness of breath), headache, and feeling unwell.

9  Tr. 166.  However, the treatment note also indicates that Mr. Roe had not taken his blood

10  pressure medication the preceding week because he was having surgery and that he had just

11  resumed taking his medication the previous night.  *Id.*  The treatment note further indicates that

12  Mr. Roe reported being active at work and the only recommendation given by the nurse was that

13  he cease smoking at least for a week until his blood pressure was back under control.  Tr. 167;

14  *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments

15  that can be controlled effectively with medication are not disabling for the purpose of

16  determining eligibility for SSI benefits.").  The only other treatment note Mr. Roe cites is dated

17  March 17, 2011, and indicates that he went to the emergency room due to symptoms of

18  pneumonia and was noted to have elevated blood pressure at the time.  Tr. 431-32.  However,

19  this instance occurred nine months prior to Mr. Roe's alleged onset and appears to be correlated

20  with a temporary severe illness unrelated to his alleged debilitating impairments.  *Id.*  Thus, the

21  treatment notes Mr. Roe relies upon appear to reflect isolated instances of high blood pressure

22  that occurred prior Mr. Roe's alleged disability onset and were correlated with either a temporary

23  illness or Mr. Roe's failure to take necessary blood pressure medication.  Tr. 167, 431-32.

ORDER ON SOCIAL SECURITY
DISABILITY - 8

1   Moreover, despite these two instances of elevated blood pressure, as the ALJ points out at

2   several points in the decision, Mr. Roe continued to work at a medium level job until he was

3   laid-off for economic reasons in October or November of 2011.[6] Tr. 19, 22-23, 80, 461.

4          Furthermore, as the ALJ notes, the record demonstrates that most of the symptoms Mr.

5   Roe complained of as relating to his hypertension (headache, neck pain, and shortness of breath)

6   did not persist into the period of alleged disability.  Tr. 20-23; Dkt. 14 at 7.  Specifically, in

7   addressing the September 7, 2011 treatment note, the ALJ acknowledged that Mr. Roe

8   complained of headache "in the context of significantly elevated blood pressure" when he

9   "mistakenly discontinued his hypertension medicine before a colonoscopy."  Tr. 17 (citing Tr.

10  167).  However, the ALJ noted that Mr. Roe's headache symptom did not continue into the

11  relevant period, noting that on appointment in December 2011 he did not endorse headache.  Tr.

12  17, 21 (citing Tr. 451).  Thus, the ALJ concluded there was "insufficient evidence of a medically

13  determinable or severe headache impairment during the period at issue."  Tr. 17.  The ALJ

14  further noted that, at an appointment just a few days after the September 2011 incident of

15  elevated blood pressure, Mr. Roe described his shortness of breath as "infrequent and mild" and

16  that he denied light headedness, headaches or muscle pain.  Tr. 21 (citing Tr. 133).  Moreover,

17  the ALJ noted that on examination in December 2011, during the relevant period, Mr. Roe

18  denied dyspnea, even with exertion, as well as headaches.  Tr. 21 (citing Tr. 451).  In sum, the

19  isolated instances of elevated blood pressure prior to the alleged disability onset date cited by

20  Mr. Roe are insufficient to establish that his hypertension interfered with his ability to perform

21  basic work activities during the relevant period.  Accordingly, the ALJ did not err in failing to

22  include Mr. Roe's hypertension as a severe impairment at step two.

23

---

[6] Mr. Roe's Disability Report indicates he was laid off on November 30, 2011.  Tr. 80.  However, in his hearing testimony Mr. Roe indicates he "thinks" he was laid off in October 2011.  Tr. 461.

Even if the ALJ had erred in failing to include hypertension as a severe impairment at step two, Mr. Roe fails to demonstrate that this error was harmful. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (the burden is on the party claiming error to demonstrate the error and that the error was harmful); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless if it is inconsequential to the ultimate nondisability determination). An ALJ's failure to properly consider an impairment at step two may be harmless where the ALJ considers all the functional limitations caused by that impairment later in the decision. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (affirming the ALJ's non-disability determination where the ALJ incorporated the limitations attributable to the claimant's severe impairments at step four); *Burch v. Barnhart,* 400 F.3d 676, 683–84 (9th Cir. 2005) (ALJ's failure to find claimant's obesity severe at step two was harmless error where ALJ considered it in determining claimant's RFC). Mr. Roe contends that his hypertension produced symptoms of headache, neck pain, and shortness of breath. Dkt. 14 at 7. However, the ALJ addressed Mr. Roe's elevated blood pressure as well as his complaints of headache, neck pain, and shortness of breath, in evaluating his impairments at step four and in formulating the RFC. Tr. 18-23. Mr. Roe fails to identify any symptoms or limitations related to his hypertension that the ALJ failed to consider or account for in the RFC. Thus, even if the ALJ had erred in failing to include hypertension at step two, Mr. Roe fails to demonstrate that the alleged error was harmful.

Accordingly, the ALJ did not harmfully err in failing to include hypertension as a severe impairment at step two.

**B.      Failure to Include Limitations from Hypertension, COPD, Hepatitis and Rheumatoid Arthritis**

ORDER ON SOCIAL SECURITY
DISABILITY - 10

1    Mr. Roe also contends that the ALJ erred in failing to consider and include limitations for

2  the full range of symptoms from Mr. Roe's hypertension, COPD, hepatitis, and rheumatoid

3  arthritis in the RFC.  Dkt. 14 at 8.  The Court disagrees.

4    As noted above, Mr. Roe fails to identify any specific symptoms or limitations resulting

5  from his hypertension that the ALJ failed to consider or include in the RFC.  With respect to

6  COPD, hepatitis and rheumatoid arthritis, Mr. Roe contends the ALJ failed to account for the

7  fact that his resulting breathing problems, chronic fatigue, and body aches are "exacerbated by

8  activity." Dkt. 14 at 8-9.  However, the ALJ considered these symptoms in formulating the RFC

9  and specifically limited Mr. Roe to light work based on his contemporaneous complaints of

10 fatigue and body aches.  Tr. 23.  Mr. Roe fails to point to any evidence indicating that his chronic

11 fatigue, body aches, or breathing problems were exacerbated by activity such that he was unable

12 to perform light work with the additional limitations provided in the RFC.  In other words, Mr.

13 Roe fails to identify any specific evidence indicating that these symptoms imposed greater

14 limitations than were accounted for in the RFC.  Thus, at most, Mr. Roe's argument that greater

15 limitations should have been included in the RFC amounts to an alternative interpretation of the

16 evidence but fails to establish the ALJ's interpretation was unreasonable.  *Tommasetti v. Astrue*,

17 533 F.3d 1035, 1038 (9th Cir. 2008) (Where evidence is susceptible to more than one rational

18 interpretation, the Court must uphold the ALJ's findings if they are supported by inferences

19 reasonably drawn from the record.).

20    Accordingly, the ALJ did not err in determining the RFC.

21   **C.      Mr. Roe's Credibility**

22    To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

23 reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (internal citation

ORDER ON SOCIAL SECURITY
DISABILITY - 11

and quotation marks omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834 (internal citation and quotation marks omitted).

Here, the ALJ reasonably discounted Mr. Roe's allegations of disabling impairments on the grounds that he stopped working due to "lack of work" and not because of his impairments. Tr. 22-23 (citing Tr. 80 (Disability Report indicating Mr. Roe stopped work November 30, 2011 due to "lack of work.")). A claimant's work record is relevant in evaluating a claimant's subjective complaints. 20 C.F.R. § 404.1529(c)(3) ([w]e will consider all of the evidence presented, including information about your prior work record …"). In *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), the Court found the ALJ reasonably discounted the claimant's subjective complaints because the claimant indicated that he had left his last job because he was laid off, rather than because of his impairments. *Bruton*, 268 F.3d at 828. In *Bruton*, the claimant's alleged disability onset date was the same date he was laid off. *Id.* Some cases have distinguished *Bruton* in instances where there is a significant period of time between the date the claimant last worked and the alleged disability onset date or, in some instances, where there is evidence indicating the claimant's condition deteriorated in the intervening period. *Clark v. Colvin*, 13-cv-0747, 2013 WL 6095842, at 2 (W.D. Wash. Nov. 20, 2013) (citing *McGowan v. Astrue*, 12-cv-281, 2012 WL 5390337, at *5 (W.D. Wash. Oct.17, 2012); *Smith v. Astrue*, 11-cv-2524, 2012 WL 5269395, at *9 (D. Ariz. Oct.24, 2012); *Shehan v. Astrue*, 08-cv-01302, 2009 WL 2524573, at *3 (C.D. Cal. Aug.17, 2009)). However, in this case, Mr. Roe's alleged disability onset date generally coincides with the date he was laid off from his most recent job.

1    Tr. 80, 461.  Moreover, as the ALJ notes, Mr. Roe's previous job "was a physically demanding

2    job, classified under the *Dictionary of Occupational Titles* as medium work" and "[t]he record

3    fails to establish a significant increase in symptoms or deterioration in functioning during the

4    period starting November 30, 2011 and ending January 1, 2012." Tr. 19.  Mr. Roe does not

5    argue or cite to any evidence indicating that his condition worsened during the relevant period.

6    *See* Dkt. 14.  In fact, Mr. Roe does not challenge this ground for discounting his credibility at all.

7    *Id.*  Accordingly, under the circumstances, the Court cannot find the ALJ was unreasonable in

8    determining that because Mr. Roe was able to work at a physically demanding job up until the

9    time he alleged disability, and because his employment ended for reasons unrelated to his

10   impairments, that his subjective complaints were less credible.

11        The ALJ also reasonably considered that the objective medical evidence did not fully

12   support the degree of limitation Mr. Roe alleged during the relevant period.  Tr. 22-23.  "While

13   subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

14   by objective medical evidence, the medical evidence is still a relevant factor in determining the

15   severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 .3d 853, 857

16   (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2).  Here, the ALJ notes that Mr. Roe linked several of

17   the symptoms alleged in his testimony to beginning with the ribavirin and Pegasys treatment for

18   hepatitis C, including his lower leg pain which he claimed began in October 2011.  Tr. 22.

19   However, as the ALJ notes, the record shows that Mr. Roe did not complain of leg pain during

20   the relevant period and that he did not begin ribavirin and Pegasys treatment until February 2012,

21   several months after his date last insured.[7]  Tr. 22, 127-29.  Moreover, as the ALJ notes, although

22

23   _____
[7] Mr. Roe challenges this finding on the grounds that he did not attribute all of his symptoms to ribavirin and Pegasys treatment.  Dkt. 14 at 10-11.  However, the ALJ also did not attribute all of Mr. Roe's symptoms to his treatment.  Rather, the ALJ specifically discounted Mr. Roe's complaint of leg pain as

ORDER ON SOCIAL SECURITY
DISABILITY - 13

Mr. Roe complained of shortness of breath, on examination during the relevant period he denied

dyspnea, even with exertion, and reported improvement in his fatigue.  Tr. 22 (citing Tr. 451).

Although not a sufficient reason on its own to discount Mr. Roe's credibility, the ALJ also

reasonably considered and concluded that the objective medical evidence did not fully support

the degree of limitation alleged by Mr. Roe during the relevant period.

In sum, the ALJ did not err in discounting Mr. Roe's credibility.

## IX.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

case is **DISMISSED** with prejudice.

DATED this 23rd day of March 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

related to this treatment which the record shows did not commence until after the relevant period.  Tr. 127-29, 465.  The ALJ addressed Mr. Roe's other symptoms such as fatigue, body aches and headaches throughout the decision as discussed above and, in fact, included the limitation to light work in the RFC due to Mr. Roe's claims of fatigue and body ache.  Tr. 19, 23.

ORDER ON SOCIAL SECURITY
DISABILITY - 14